IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| CODY DARUS FRENCH, | |
| Petitioner, | |
| v. | No. 1:22-CV-00026-H |
| DIRECTOR, TDCJ-CID, | |
| Respondent. | |

## OPINION AND ORDER

Petitioner Cody Darus French, a state prisoner proceeding with the assistance of counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his conviction and 60-year sentence out of Taylor County for aggravated sexual assault of a child. He asserts that he received ineffective assistance of counsel (IAC) before trial, during trial, and at sentencing and that he was denied a fair trial because of the cumulative error from his counsel's ineffectiveness and prosecutorial misconduct. He also alleges that the trial court erred in excluding spectators from the courtroom during a brief hearing, in violation of his right to a public trial. He seeks a new trial. Dkt. No. 1.

Respondent filed an answer with copies of Petitioner's relevant state-court records. Dkt. Nos. 14, 15, 16. Respondent argues that Petitioner's public-trial claim is unexhausted and procedurally defaulted, and all of his claims lack merit. Dkt. No. 16. Petitioner replied. Dkt. No. 17.

As explained below, the Court finds that regardless of whether Petitioner failed to properly exhaust his public-trial claim, it is meritless. Otherwise, the Court finds that

Petitioner has failed to overcome the difficult, deferential standard of 28 U.S.C. § 2254(d). Thus, the petition must be denied and dismissed with prejudice.

## 1. Background

Petitioner challenges his state-court conviction and prison sentence out of the 350th District Court of Taylor County, Texas. In cause number 10940-D, styled *State of Texas v. Cody Darus French*, Petitioner was charged by indictment with aggravated sexual assault of a child—his five-year-old daughter, J.F. Dkt. No. 14-1 at 6 (sealed). Petitioner pled not guilty, but a jury found him guilty. *Id.* at 51. After a presentence investigation, the trial court sentenced him to 60 years in prison. Dkt. No. 14-1 at 87.

Petitioner appealed, and the Eleventh Court of Appeals initially reversed his conviction, finding that the trial court erred in failing to instruct the jury on unanimity as to how the sexual assault occurred and that the error caused Petitioner "some harm." *See* Dkt. Nos. 15-1; 15-12. The State filed a petition for discretionary review (PDR), and the Texas Court of Criminal Appeals (TCCA) reversed the appellate court's judgment, finding that the jury-charge error was harmless because "[t]here was overwhelming evidence presented at trial that Appellant contacted *and* penetrated J.F.'s *anus* with his sexual organ—on multiple occasions, in several different locations," while the evidence and argument left almost no risk that any juror would have convicted him of contact or penetration of only her sexual organ. Dkt. No. 15-12 at 18–19 (emphasis original). The TCCA remanded the case for further proceedings. On remand, the Eleventh Court of Appeals affirmed Petitioner's conviction after considering and rejecting Petitioner's public-trial claim. *See* Dkt. Nos. 15-12; 14-9 at 55–56.

Petitioner then filed a state habeas application, but the TCCA denied the application without written order on the findings of the trial court without a hearing and on the court's independent review of the record. Dkt. No. 15-18.

Petitioner timely filed his federal petition on March 24, 2022. Petitioner raises the following grounds for relief:

1. He received ineffective assistance of counsel when his trial lawyer:

    a. failed to file a motion in limine or object to evidence that Petitioner was offered and refused a polygraph test,
    b. opened the door to evidence that Petitioner was offered and refused a polygraph test,
    c. failed to file a motion in limine or object to expert witnesses providing improper opinion evidence that the complainant was truthful,
    d. failed to object to the introduction of the recorded statement of the complainant as hearsay,
    e. failed to object to irrelevant and prejudicial extraneous evidence about Petitioner's sexual practices and preferences, including his sexual practices with his wife, his wife being underage when they married, his fathering children with other women, and his relationships with other underage females,
    f. failed to effectively cross-examine the complainant, the SANE, or the forensic interviewer,
    g. failed to request that the State elect a specific act of sexual abuse to submit to the jury and request a unanimity instruction,
    h. failed to adequately prepare for trial,
    i. failed to object to the jury instruction that improperly defined "penetration,"
    j. failed to object to the prosecutor's argument on the veracity of child abuse victims, and
    k. failed to object to closing the courtroom to hear Petitioner's complaints about his trial counsel;

2. He was denied due process and a fair trial due to cumulative harm from the ineffective assistance of counsel listed in Ground 1(a)–(k) and prosecutorial misconduct, specifically, when the prosecutor:

    a. introduced inadmissible and prejudicial evidence that Petitioner was offered and refused a polygraph,
    b. introduced inadmissible character evidence and evidence of extraneous bad acts, including Petitioner's sexual proclivities and relationships with other women,

      c. introduced inadmissible opinion testimony from all three State's experts—the CPS investigator, the SANE, and the forensic interviewer—that the complainant was truthful,
      d. introduced inadmissible evidence of Petitioner's criminal history,
      e. introduced irrelevant and prejudicial evidence that Petitioner's father was a registered sex offender, and
      f. presented improper closing argument, expressing opinion that the complainant was truthful and that children do not lie about sexual abuse;

3. He received ineffective assistance of counsel in the pretrial phase when his lawyer failed to advise him of his constitutional and statutory right to a jury trial on punishment and failed to timely file a written election to have the jury assess punishment, which deprived Petitioner of his right to jury trial on punishment;

4. The trial court erred in removing spectators from the courtroom for a brief hearing during the third day of trial in violation of his right to a public trial; and

5. His counsel's ineffective assistance during the guilt-innocence phase (restating Ground 1(a),(c)–(i)) prejudiced him during the punishment phase of trial, resulting in his 60-year sentence.

Dkt. No. 1.

    Respondent argues that Petitioner failed to properly exhaust his public-trial claim (Ground 4) and urges the Court to deny it as procedurally barred. Alternatively, Respondent argues that the public-trial claim is meritless. Respondent contends that Petitioner's claims otherwise fail to overcome the deferential standard imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

    In reply, Petitioner contends that the state-court's determination is not entitled to deference under AEDPA because the habeas court addressed each alleged error in isolation and failed to consider the totality of his claims or the cumulative harm. Dkt. No. 17. Petitioner urges the Court to consider his claims de novo and to hold an evidentiary hearing to allow him "to adequately develop the factual basis for his claims." *Id.* at 9.

2. **Legal Standard**

Section 2254 provides federal courts with a limited, but important opportunity to review a state prisoner's conviction and sentence. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011). This statute, as amended by AEDPA, creates a "highly deferential standard for evaluating state-court rulings, . . . which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam) (internal quotation marks omitted).

The basic structure of the federal habeas statute is "designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Richter*, 562 U.S. at 103. First, the statute requires that a habeas petitioner exhaust his claims in state court. 28 U.S.C. § 2254(b). If the state court dismisses the claim on procedural grounds, then the claim is barred from federal review unless the petitioner shows cause and prejudice. *Richter*, 562 U.S. at 103. And if the state court denies the claim on the merits, then AEDPA's relitigation bar applies. *Lucio v. Lumpkin*, 987 F.3d 451, 464–65 (5th Cir. 2021).

A. **Exhaustion and Procedural Default**

Courts may not grant habeas relief unless the petitioner first exhausts all available state remedies. 28 U.S.C. § 2254(b)(1)(A). "The exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity fully to consider federal-law challenges to a state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." *Duncan v. Walker*, 533 U.S. 167, 178–79 (2001). Although unexhausted claims prevent courts from granting relief, courts may deny a petition on the merits despite the petitioner's failure to exhaust the state remedies. 28 U.S.C. § 2254(b)(2).

5

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998), which in Texas is the TCCA. *Richardson v. Procunier,* 762 F.2d 429, 431–32 (5th Cir. 1985). More than mere presentation of claims to the high court is required. Raising a claim "in a procedural context in which its merits will not be considered" does not constitute "fair presentation"; thus, it cannot satisfy the exhaustion requirement. *Castille v. Peoples,* 489 U.S. 346, 351 (1989). To present claims to the TCCA, a petitioner must pursue his claims through direct appeal and a PDR or through a state habeas application. *See Myers v. Collins,* 919 F.2d 1074, 1076 (5th Cir. 1990).

Additionally, if a petitioner presents new legal theories or factual claims in his federal habeas petition, then he has not met the exhaustion requirement. *Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir. 1997) (citing *Anderson v. Harless,* 459 U.S. 4, 6–7 (1982)). "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Harless,* 459 U.S. at 6 (internal citations omitted).

In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, rather than procedural. *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000) (citing *Green v. Johnson,* 116 F.3d 1115, 1121 (5th Cir. 1997)). In Texas writ jurisprudence, a "denial" signifies that the state high court "addressed and rejected the merits of a particular claim," but a "dismissal" means that the court "declined to consider the claim for reasons unrelated to the claim's merits." *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997); *Barrientes v. Johnson,* 221 F.3d 741, 780 (5th Cir. 2000).

Along with the exhaustion requirement, the doctrine of procedural default provides "[a] distinct but related limit on the scope of federal habeas review." *Nobles*, 127 F.3d at 420. Federal habeas courts are barred from reviewing a question of federal law decided by a state court "if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment," whether the ground is substantive or procedural. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). In Texas, the high court's dismissal of a habeas application as subsequent provides an adequate and independent state ground, barring federal review. *See Nobles*, 127 F.3d at 423.

"[A] habeas petitioner who has failed to properly present his federal constitutional claims to the state courts can still be considered to have exhausted his state remedies if the state courts are no longer open to his claim because of a procedural bar." *Busby v. Dretke*, 359 F.3d 708, 724 (5th Cir. 2004). But "the same procedural bar that satisfies the exhaustion requirement at the same time provides an adequate and independent state procedural ground to support the state judgment and thus prevents federal habeas corpus review of the defaulted claim." *Id.* A petitioner may overcome this bar only if he can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750.

But if a federal claim was fairly presented to the state court, then the federal habeas court cannot assume that the state court overlooked the claim. *Johnson v. (Tara) Williams*, 568 U.S. 289, 298 (2013). Instead, the federal court must presume that the state court adjudicated the federal claim on the merits, and thus the relitigation bar of Section 2254(d) applies. *Lucio*, 987 F.3d at 464–65 (citing *(Tara) Williams*, 568 U.S. at 298).

B.  **AEDPA's Relitigation Bar**

Once a state court has rejected a claim on the merits, a federal court may grant relief on that claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

A state-court decision is contrary to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby*, 359 F.3d at 713. A decision constitutes an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also Pierre v. Vannoy*, 891 F.3d 224, 227 (5th Cir. 2018) (explaining that a petitioner's lack of "Supreme Court precedent to support" a ground for habeas relief "ends [his] case" as to that ground).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Federal habeas relief is precluded even when the state court's factual determination is debatable. *Id.* at 303. State-court factual determinations are

entitled to a "presumption of correctness" that a petitioner may rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This "deference extends not only to express findings of fact, but to the implicit findings of the state court." *Ford v. Davis*, 910 F.3d 232, 234–35 (5th Cir. 2018).

The focus of federal review under Section 2254(d) "should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle." *Neal v. Puckett*, 286 F.3d 230, 246 (2002). State courts need not provide reasons for their decisions, and even summary denials of relief are entitled to substantial deference. *Richter*, 562 U.S. at 100–01.

Of course, when the state high court "explains its decision on the merits in a reasoned opinion," then the federal court's review is straightforward—it "simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). But when reviewing a summary denial, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id.* If the lower court's rationale is reasonable, the federal court must "presume that the unexplained decision adopted the same reasoning." *Id.* This presumption may be rebutted, however, by evidence that the summary decision "relied or most likely did rely on different grounds." *Id.* at 125–26. And when the lower state court decision is unreasonable, then it is more likely that the state high court's single-word decision rests on alternative grounds. *Id.* at 132.

In short, a reviewing court cannot "overlook[] arguments that would otherwise justify the state court's result." *Richter*, 562 U.S. at 102. A federal habeas court "must determine what arguments or theories supported, or . . . could have supported, the state

court's decision" before considering "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent" with Supreme Court precedent. *Id.* "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Moreover, "federal habeas relief does not lie for errors of state law," and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Federal habeas review is reserved only as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102–03. This standard is intentionally "difficult to meet." *Id.*

Finally, federal habeas review is limited "to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). In short, to overcome AEDPA's highly deferential, difficult standard, a petitioner "must show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny . . . relief was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans v. Davis*, 875 F.3d 210, 217 (5th Cir. 2017).

### C. Harmless-Error Analysis

Even if a petitioner satisfies the onerous requirements of AEDPA, a federal court cannot grant relief unless the petitioner also proves that the state-court error was prejudicial. *Brown v. Davenport*, 596 U.S. 118 (2022). To do so, the petitioner must show that the error was not harmless. In other words, the petitioner must demonstrate that the state-court error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993).

### 3. Analysis

The Court thoroughly examined Petitioner's pleadings, Respondent's answer, the relevant state court records, and the applicable law. The Court finds that an evidentiary hearing is not necessary to resolve the instant petition. *See Young v. Herring*, 938 F.2d 543, 560 n.12 (5th Cir. 1991) ("[A] petitioner need not receive an evidentiary hearing if it would not develop material facts relevant to the constitutionality of his conviction."). As explained below and based on the facts and law set forth in Respondent's answer, Petitioner's claims are denied.

### A. Petitioner is not entitled to relief on his public-trial claim regardless of whether it was properly exhausted.

Petitioner's fourth ground for relief focuses on the brief closure of the courtroom during the third day of trial. The relevant facts are summarized in the Eleventh Court's opinion on remand. Dkt. No. 14-9 at 55–57. Petitioner's counsel informed the trial court that Petitioner requested an opportunity to speak with the judge. *Id.* at 56. The trial court told the spectators that he was "going to have to take something up" and asked them to leave the courtroom "just for a few minutes." *Id.* After the courtroom cleared, Petitioner asked the Court to appoint new trial counsel and provided reasons for his request. *Id.* The

trial court denied the request then allowed the public to reenter the courtroom. *Id.* There were no objections to the public being excluded from the brief hearing. *Id.*

Respondent argues that Petitioner's public-trial claim should be denied because it is unexhausted and procedurally barred. Specifically, Respondent asserts that Petitioner raised this claim in his direct appeal and should have raised it in a PDR but did not. Instead, Petitioner raised this claim in his state habeas application, but the habeas court refused to address it because it was "addressed by the appellate courts and is fully resolved." Dkt. No. 14-9 at 296.[1] Thus, Respondent contends that Ground 4 was not properly presented to the TCCA and is now procedurally barred. Nevertheless, Respondent also argues that the intermediate appellate court properly rejected the claim—and this Court should too—because it was not preserved by objection and because Petitioner has demonstrated no harm resulting from the short closure of the courtroom while the trial court heard Petitioner's request for new counsel. *See* Dkt. No. 16 at 30–31; Dkt. No. 14-9 at 56–57.

In his reply, Petitioner does not dispute or otherwise address Respondent's contention that his public-trial claim is unexhausted and procedurally barred. Instead, he reiterates his argument that trial counsel was ineffective for failing to properly preserve the public-trial error. Dkt. No. 17 at 7.

Considering the record and the parties' arguments, the Court concludes that, regardless of whether Petitioner properly presented his public-trial claim to the TCCA, he is

---

[1] The state habeas court separately addressed Petitioner's claim that his attorney was ineffective for failing to object to the closure of the courtroom. *See* Dkt. No. 15-21 at 21. There, the court concluded that counsel's failure to object on public-trial grounds "did not affect the outcome of the trial or lead to a fundamentally unfair trial," applying *Weaver v. Massachusetts*, 582 U.S. 286 (2017).

12

not entitled to federal habeas relief on this ground. As explained by the Eleventh Court, Petitioner forfeited his right to a public trial by failing to object to the brief closure of the courtroom. Additionally, even if the trial court erred in excluding the public from hearing Petitioner's request for new counsel, Petitioner has failed to demonstrate that the private hearing had any effect or influence on the verdict, much less a "substantial and injurious" one. *See Brecht*, 507 U.S. at 622.

### B. Petitioner has not overcome AEDPA's relitigation bar.

The well-known standard applicable to IAC claims is articulated in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Under the two-pronged *Strickland* test, a petitioner must show that counsel's performance was both deficient and prejudicial. *Id.* at 687. An attorney's performance was deficient if the attorney made errors so serious that the attorney was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution. *Id.* That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession.

A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689. A strong presumption exists "that trial counsel rendered adequate assistance and that the challenged conduct was reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*, 466 U.S. at 694).

Additionally, a petitioner must show that counsel's deficient performance prejudiced the defense. To establish this prong, a petitioner must show that counsel's errors were so serious as to deprive petitioner of a fair trial. *Strickland*, 466 U.S. at 687. Specifically, to

prove prejudice, a petitioner must show "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). This is a heavy burden that requires a "substantial," and not just a "conceivable," likelihood of a different result. *Richter*, 562 U.S. at 112; *see also Pinholster*, 563 U.S. at 189.

In the context of § 2254(d), the deferential standard that must be given to counsel's representation must also be considered in tandem with the deference that must be accorded state-court decisions, which has been called "doubly" deferential. *Richter*, 562 U.S. at 105. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Additionally, if a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Strickland*, 466 U.S. at 697.

Here, Petitioner argues that "[a]lthough the state court may have technically adjudicated the merits of [his IAC claims]," the state-court's determination is not entitled to deference and that his claims instead merit de novo review. Dkt. No. 17 at 2–3. The Court disagrees.

First, Petitioner asserts that the state court "made no findings and therefore did not decide whether [counsel was ineffective] for fail[ing] to preserve his right to a jury trial at the

14

punishment phase; whether [he] was denied due process and a fair trial due to the cumulative harm from [his IAC and prosecutorial-misconduct claims]; and whether [he] was denied his constitutional right to a public trial." *Id.* at 3.

As explained above, state courts are not required provide reasons for their decisions, and even summary denials of relief are entitled to substantial deference. *Richter*, 562 U.S. at 100–01. But here, the state habeas court did make findings with respect to Petitioner's claim that counsel was deficient for failing to preserve his right to have the jury assess punishment. Dkt. No. 15-21 at 22–23. Among other things, the state court found that Petitioner was aware of his right to have a jury assess punishment because he had made similar elections in prior cases. *Id.* at 21. The state habeas court also found credible counsel's statement that Petitioner's unwillingness to discuss punishment with him before trial thwarted his efforts to prepare for a punishment hearing before the guilt-innocence stage of trial. *Id.* at 22. The state court also found credible counsel's statement that Petitioner did not object after counsel told him the court would assess punishment. *Id.* And the state court found that Petitioner made no argument that counsel was unprepared for the punishment hearing before the court, and nothing in the record suggested that trial counsel was unprepared. Finally, the state court found that counsel's advice against going to the jury for punishment was a reasonable exercise of his professional judgment, that the presentence investigation counsel requested was helpful to the Petitioner and would not have been available if he had elected to have the jury assess punishment, and that Petitioner understood and voluntarily waived his right to have the jury assess punishment on the sound professional advice of his trial counsel. *Id.* at 23.

So, contrary to Petitioner's assertion, the state habeas court made extensive findings about Petitioner's election to have the court assess his punishment. These findings are presumed correct, and the habeas court reasonably concluded that counsel's performance was not deficient, and that Petitioner suffered no resulting prejudice. Petitioner has not shown that he is entitled to habeas relief on this ground.

The habeas court also made findings about counsel's failure to object to the brief closure of the courtroom to preserve his public-trial claim. Dkt. No. 15-21 at 21. The habeas court found that counsel's failure to object "did not affect the outcome of the trial or lead to a fundamentally unfair trial." *Id.* In so finding, the habeas court expressly relied on *Weaver v. Massachusetts*, 582 U.S. 286 (2017).

In that case, the Supreme Court explains that "in the context of an ineffective-assistance claim" for failure to object to a public-trial violation, "a petitioner must show prejudice in order to obtain a new trial." *Weaver*, 582 U.S. at 305. Notably, the Supreme Court also explained that "a public-trial violation does not always lead to a fundamentally unfair trial." *Id.* at 303–04. In *Weaver*, the petitioner failed to show that the trial was fundamentally unfair because, among other things, the closure was limited, the courtroom remained open during the evidentiary presentation, and there was a record of the closed proceedings that did not indicate any basis for concern, other than the closure itself. *Id.* at 304. In short, to succeed on an IAC claim for failure to object to a public-trial violation, the petitioner must show "a reasonable probability of a different outcome" or "that counsel's shortcomings led to a fundamentally unfair trial." *Id.* at 304–05.

Petitioner has not made the necessary showing here. The closure in this case was limited to a short hearing on Petitioner's request for new counsel—even more limited than

16

the trial in *Weaver*, which excluded spectators for two days of voir dire. And there is a full record of the closed hearing. Dkt. No. 14-4 at 50–59. Notably, Petitioner does not challenge the substance of the hearing in any way. No witnesses testified in secret. No evidence was presented in the absence of the jury and the spectators. Petitioner was permitted to address the court and explain his dissatisfaction with his attorney's performance up to that point. He did not object to the exclusion of spectators from the hearing, nor did anyone else. The court heard his argument, considered his request for new counsel, and denied it. *Id.*

Nothing about the brief closure of the courtroom or the short, closed hearing rendered Petitioner's trial fundamentally unfair. And Petitioner has failed to show a reasonable probability of a different result but for counsel's failure to object. In short, Petitioner has not shown that he was prejudiced in any way by either the brief closure of the courtroom or counsel's failure to object to the public-trial violation. In other words, the state habeas court identified appropriate, binding Supreme Court precedent and reasonably applied it to Petitioner's case. Thus, Petitioner has not shown that he is entitled to relief on this ground.

Next, Petitioner contends that the habeas court's determination is not entitled to deferential treatment because it unreasonably addressed each alleged act of ineffectiveness in isolation, rather than considering the totality of the deficient performance or addressing the cumulative error of Petitioner's IAC and prosecutorial-misconduct allegations. The cumulative-error doctrine first requires a showing of constitutional error. *See Young v. Stephens*, 795 F.3d 484, 494 (5th Cir. 2015) (holding that a petitioner fails to satisfy cumulative error doctrine if the petitioner fails to demonstrate any constitutional error

committed during trial); *Miller v. Johnson*, 200 F.3d 274, 286 n.6 (5th Cir. 2000) (explaining that absent constitutional error, there is nothing to cumulate). Even then, the cumulative-error doctrine does not permit federal habeas relief unless the constitutional error "so infected the entire trial that the resulting conviction violate[d] due process." *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) (cleaned up); *Jackson v. Johnson*, 194 F.3d 641, 659 n.59 (5th Cir. 1999).

Here, the state habeas court addressed each of Petitioner's allegations and found no Sixth Amendment violation. Applying *Strickland*, the court found that each alleged act or omission by counsel failed to satisfy the deficiency prong, the prejudice prong, or both. Dkt. No. 15-21 at 16–22. The state court found that counsel was not deficient for failing to object to evidence and argument that was admissible and proper under state law. *Id.* at 17, 20, 21. The TCCA adopted those findings. This Court will not "reexamine state-court determinations on state-law questions." *See Estelle*, 502 U.S. at 67–68. Additionally, the state court found, and the TCCA adopted, that many of the complained-of acts or omissions of counsel were the result of reasonable trial strategy. *Id.* at 16–22. Petitioner's disagreement with those strategic choices does not make them unreasonable, and the Fifth Circuit discourages courts from engaging in "Monday-morning quarterbacking on a Thursday." *United States v. Molina-Uribe*, 429 F.3d 514, 520 (2005). In any event, the habeas court repeatedly found there was no reasonable probability of a different result absent counsel's alleged errors. Dkt. No. 15-21 at 16–22. Petitioner has not met the demanding, doubly deferential standard under Section 2254(d) and *Strickland* to overcome AEDPA's relitigation bar on his IAC claims. *Richter*, 562 U.S. at 105.

Likewise, the court found that the prosecutor's evidence and arguments were unobjectionable, and that "even had an objection been proper, there is no prejudice; there is no reasonable probability that exclusion of the evidence [or any objectionable portion of the closing argument] would have led to a different result." Dkt. No. 15-21 at 17, 18, 21. In other words, the state habeas court examined the prosecutor's conduct and found no constitutional violation. Prosecutorial misconduct only implicates the constitution when it "so infected the [trial] with unfairness as to make the resulting [conviction] a denial of due process." *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (quoting *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996)). Thus, under the cumulative-error doctrine as recognized in the Fifth Circuit, there is nothing for the Court to cumulate. "Twenty times zero equals zero." *Derden*, 978 F.2d at 1458 (quoting *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987)).

In sum, Petitioner has failed to show that the state-court's adjudication of his claims resulted in a decision contrary to clearly established federal law or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Additionally, Petitioner has failed to identify any error that had a substantial and injurious effect on the verdict. *Brecht*, 507 U.S. at 622.

### 4. Conclusion

For the reasons discussed above and based on the facts and law set forth in Respondent's answer, the Court denies the petition and dismisses this civil action with prejudice.

Additionally, pursuant to Rule 22 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c), Petitioner has failed to show that reasonable jurists would (1) find this

Court's "assessment of the constitutional claims debatable or wrong," or (2) find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As a result, the Court denies any request for a certificate of appealability.

So ordered.

The Court will enter judgment accordingly.

Dated February 18, 2025.

_____
JAMES WESLEY HENDRIX
United States District Judge